Okay. We'll go on to case number two this morning. And case number two is 21-2431 United States v. Anthony Moore. And welcome to a few. Miss Hill. Good morning, Your Honor. May it please the court. My name is Angela Hill and I'm presenting argument today on behalf of appellant Anthony Moore. He's appealing the district court's first death act order, reducing his sentence to 420 months imprisonment from a life term of imprisonment. He's serving a sentence for conspiracy to distribute crack cocaine and being a felon in possession of a firearm. In 2008, when he was sentenced, he was subject to a mandatory life sentence under 21 U.S.C. 841b1a's recidivist provisions. And those same prior convictions also subjected him to the career offender guideline. His effective guideline, however, was life imprisonment due to that statutory enhancement to life. He was precluded from filing previous reduction motions for reductions in sentence because of his statutory life sentence. However, when the first step act was enacted, the statutory penalties of the Fair Sentencing Act became applicable to him and he filed a motion in accordance with the first step act, asking that his sentence be reduced to time served. The court here granted in part the motion, reducing his sentence to 420 months from life imprisonment. Mr. Moore is contending that the district court abused its discretion in this order. First, he's contending that it failed to consider his arguments that based on the intervening case law of Mathis and Ruth, that his prior convictions now supported neither the statutory enhancement nor the career offender guideline. He's arguing that the district court abuses discretion when it misunderstood the law. In particular, it appears to conflate the statutory recidivist enhancement with the career offender guideline. The court abused its discretion when it declined to apply intervening case law in Mr. Moore's case without any explanation. But one month later, applied the same intervening case law in a co-defendant's case. The sentence Mr. Moore maintains is arbitrary and creates an unwarranted sentencing disparity based on the application of Mathis in one case and not in another case. And finally, he is arguing that the court abused its discretion when it incorrectly labeled his crime as a violent crime and based its 3553 analysis on that characterization and also in determining whether he was a danger to the community. So I would address the first argument here. Mr. Moore is contending that the district court failed to consider his argument that the intervening case law of Ruth and Mathis no longer supported or with that intervening case law, his prior convictions would no longer support the statutory enhancement or the recidivist enhancement. Ms. Hill, is it your contention that the district judge was required to apply Mathis and Ruth on a resentencing under the First Step Act? In this argument, Mr. Moore acknowledges the court's precedent that the district court was not required to apply Mathis. What he's arguing is that the district court did not consider fully his arguments and misunderstood his arguments because he was arguing that the intervening case law would affect both his statutory sentence and his guideline sentence. So in the order, the judge seems to conflate the statutory enhancement with the career offender guideline. In one section of the order, to quote from the order, the judge states that if Moore is entitled to plenary resentence and is not in fact a career offender, then the penalty range would be reduced from 10 years to life to 5 to 40 years. So the judge here is clearly analyzing the statutory range, but he is referring to it as the career offender enhancement. And nowhere in the order does he acknowledge the guidelines range in this order. So there seems to be some confusion there. You argued that the court failed to recognize the argument regarding the statutory recidivist enhancement. But the court, in discussing the predicate offense argument, repeatedly identified the argument as being that on pages 3 to 11 of the amended motion to reduce the sentence. And aren't the majority of those pages devoted to the statutory recidivist argument rather than the guidelines argument? So in his motion, his original First Step Act motion, the majority of the time is spent discussing the Mathis analysis, and he starts by discussing the statutory analysis. But he concludes at the end that this also applies to the career offender guideline. And without repeating that entire argument, Mr. Moore does cite to the case law indicating that the same analysis applies to the career offender guideline. And it was actually more significant for the career offender guideline. If the court had applied this new intervening case law, it would have changed Mr. Moore's guideline sentence from 360 to life to 210 to 262 months. And the court never acknowledges that. So while there is a significant amount of time spent on that argument, he explains that the same analysis applies for the career offender guideline. So I guess I'm trying to think like a former district judge here for a moment. And if I had, as a sentencing judge, discretion on whether to apply Mathis, which depends upon theoretical, hyper technical, unrealistic and arbitrary arguments to distinguish different statutes and different recidivist provisions. Why would I want to apply Mathis under the rubric of my discretion under 18 U.S.C. 3553A? Well, I think that it is left to the judge's discretion, absolutely, whether to consider Mathis in that order. But clearly this judge has considered Mathis in other cases. And here there's no explanation as to why. So we don't know the judge's reasoning for not considering it in this case. When a month later it entered an order in a codefendant's case where it did consider Mathis. So your reference to that raises a concern that I have here in essence about the state of our law concerning codefendant disparities, or at least as I read these different cases. And I'll ask Mr. Norwood about this as well. I'm not entirely clear on what district judges may do and what they should do. But I'm troubled by the argument that a defendant can appeal on the basis of a later sentence of a codefendant. And I wonder how that might work. Let me just ask you, suppose the first sentence, first defendant in a multi-defendant drug conspiracy goes before the court and gets a very light sentence, surprisingly light. Later on in the sequence of sentencing those codefendants, the district judge realizes, wow, this is worse than I thought, and starts going back closer to the norm. Can the government appeal or argue on appeal from that first lenient sentence that the disparities with the other sentences, the other defendant sentences, justify a remand of that first lenient sentence? I believe the issue is whether the judge explained the reason for the disparity. I'm talking about a situation in which there's no discussion of it in the first sentence in the group. We have to worry about the direction of time here. Sure. Can the government make that argument? And should we entertain such an argument? You know, and I am confused as to the state of the law as well. I did cite two case law where the court has said that it can consider the disparity between codefendants. So I think in that case, if there was an unwarranted disparity where the judge did not explain the difference, that might be the case under the current case law. I would note that potentially the judge could explain in the second order why the sentencing, the sentence was different, and perhaps that would solve the problem. But I do believe there does have to be an explanation. But you seem then to be taking the position that, in essence, all sentences in a multi-defendant case are open and subject to review until all of them have been sentenced. And I'm having trouble seeing how that would work, given our procedures for handling criminal cases and appeals. Sure. And I would argue that, again, if there was a disparity, the judge could explain it later on. But I don't think that under the case law, since a defendant is allowed to raise a claim that the sentence was disparate from another defendant's sentence, that the defendant would technically be able to raise that claim, I would say, because the defendant would not know whether the sentence was disparate until a subsequent defendant's sentence was entered. So you could raise this without the district judge ever having been confronted with the issue? Right, since the claim did arise after the order was entered in sentencing. I'm not sure how a district court can be faulted for an alleged unwarranted disparity with a co-defendant sentencing when the co-defendant sentencing hasn't yet occurred. I mean, I can't, you know, that's really hard balancing. I believe under the case law that it would be meaningless if the defendant couldn't challenge that decision later on, because under the case law, it does say that the court can consider a disparate sentence from a co-defendant. So I understand your position and what you're saying. I would argue, though, that that would be meaningless if the defendant can't then go back and argue that the sentence is disparate. So does that answer your question? Well, thank you. So back to the first argument here, I would note that in the motion, the government never contested the substance of the arguments that Ruth and Mathis, those cases would render those prior convictions. They don't count for the prior convictions anymore. The government never contested that. The court acknowledged that it simply declined to apply Mathis. It didn't give a reason for declining to apply Mathis. And also, I would note that the court failed to acknowledge the guidelines range here with or without that intervening case law. It refers only to the statutory ranges throughout the order. And this appears to be based on a misunderstanding of the law. The court, as I was saying, does continuously conflate the statutory enhancement with the career offender guideline. It applies that career offender label. Surely you're not suggesting, though, that Judge Gilbert, I can't think of a judge in our circuit who's had to do more drug sentencing over the last 30 years. Yes. You don't think he, whether it's clearly articulated on each page, you don't think he understood the difference between the guidelines and the statutory provisions? I believe that Judge Gilbert understands the difference between the guidelines and the statutory enhancements. I do 100 percent. I believe in this particular order, there is certainly some confusion that I can't explain. I know Judge Gilbert has been on the bench since the early 90s, and he is very familiar with drug sentencing. But in this particular order, the statutory ranges are referred to as a career offender enhancement. And the argument about the career offender enhancement is simply not addressed in the order. And this was one of the main arguments that Mr. Moore raised in his First Step Act motion. And simply because it wasn't discussed, the silence in the record as to the guidelines range was not discussed. This court can't be assured that the district court actually considered the argument that the guideline range would be affected by the intervening case law. And the failure to analyze this guideline range, I believe, is important, particularly in this case. The sentence of 420 months actually fell within the statutory ranges either way. So without the enhancement, the recidivist enhancement, the statutory range was 10 to life. With the enhancement, it was 5 to 40 years. So that 420 months fell within either range. But under the guidelines, it was a very different case. Without the enhancement, the new guideline range was 360 months to life. With the enhancement, it made a big difference. It fell to 210 to 262 months. And that 420 month sentence was markedly higher than the guideline range that would apply. But we don't know why the court didn't apply MATHIS. It certainly had the discretion either way to apply it or not to apply it. But there's no indication why it didn't apply it or if it considered the argument as pertaining to the guidelines, the career offender guideline. I think you should wrap up for now. Okay. All right. Yeah, because yeah. Thank you. One more thing you want to say? No, if my time is up, I would rest on my brief. Thank you, Your Honor. You'll still get your rebuttal time. Okay. Thank you, Your Honor. Yeah. Okay. Mr. Norwood. Your Honors, may it please the court. I think this is a very straightforward case. The issue is whether Judge Gilbert was required to apply the intervening changes in the law or was simply authorized to do so but not required. Judge Gilbert recognized this court's decision, and I might pronounce this incorrectly, but it's FOWAWI or something like that, which said a district court is authorized to consider intervening changes in the law, but it's not required to do so. Judge Gilbert followed that decision and chose not to apply intervening changes in the law to Mr. Moore's case. By not applying the intervening changes in the law, there is no dispute that the guideline range would be 360 months to life, and Judge Gilbert reduced the defendant's sentence down to 420 months. That decision, I saw you wince a little bit, Judge Rovner. It's still a long time, but it is a sentence that is authorized by law and is a correct sentence. Judge Gilbert gave an analysis under the 3553A factors for that sentence. Judge Gilbert sat through a four-day trial with this defendant and knows this defendant's history and knows the facts of the case, and the government believes that sentence, that reduction in sentence to 420 months, should be affirmed. What is the best evidence, Mr. Norwood, that the court recognized and addressed both the statutory recidivist enhancement and the guideline career offender enhancement, other than the court's spike to the page numbers in the amended motion, making those arguments as I mentioned to Ms. Hill? Your Honor, I think the district order indicates it knew that if it were to apply the intervening changes in the law, that the guideline range would be 5 to 40 months in this case. That's a short range. Excuse me, statutory range. I apologize, Your Honor. This gets a little confusing for me. It gets confusing for me sometimes. And there was a probation worksheet, which also had all this information on it, that is part of the record. It was attached to the defendant's motion for reduction in sentence, document 532, exhibit 4, as well as the government's response, document 539, exhibit 1. It's a probation's worksheet, which has all these calculations and permutations in it. It does not have the Mathis applications, but without Mathis, it says, here is the guideline range applying the recidivist enhancement, as well as the career offender guidelines. So Judge Gilbert knew what that range was, the advisory guideline range. And I don't know, if Your Honors want me to go into the unwarranted disparity, I would tend the rest of my briefing, because I wasn't prepared to go into a long, I guess, philosophical discussion about the unwarranted disparity in that particular guideline provision. But I understand the tension you've noted, Judge Hamilton. And also, this court has said on many times, sentencing is very individualized. And I would say it is hard to find two identically situated defendants. It could be, there could be, but I mean, in this case, the, it talks about two, the guideline or the statute talks about disparities among defendants with similar records who have been found guilty of similar conduct. But there are so many factors that go into a sentencing under 3553A. When you look at the defendant's history and characteristics, their upbringing, their mitigating factors, their aggravating factors, there is so much involved in sentencing that is personalized. And the district court, with all due respect to this court, the district court is much closer and has a much better grasp of all those factors when it's determining a sentence, and in this case, determining a reduction in sentence. So the government believes Judge Gilbert did everything according to this court's precedents, and that decision should be affirmed. If your honors have any further questions, I'll be glad to answer them. But again, the government believes this is a pretty straightforward case. Yes, Mr. Norwood, I'll go ahead and ask you, what do you think our law says about disparities among co-defendants? I need to be careful. I think attorneys doing legal research could find case authority supporting very different arguments. That's a very diplomatic way of answering my question. That's it. It's accurate. Let me recast the question then. In terms of an approach that is consistent with the guidelines, the statute 3553A, and Booker and Gall, first of all, do you see sound reasons to prohibit a district judge from considering inter-defendant disparities within the same case? Can you repeat that question? Do you see sound reasons to prohibit a district judge from considering potential disparities among co-defendants in the same case? Prohibiting a judge from considering that? I think, off the top of my head, I would say no, but with the caveat, again, that every co-defendant is individual. Sure. And that's the problem with it. Sure, if you have a... Look, I understand the point, but as a veteran prosecutor, you know that the prosecutors in these multi-defendant drug cases have some sense of relative culpability. I was getting ready to get to that point. You have leaders. You have lesser players in the conspiracy. You have individuals who may have possessed firearms or committed other acts of violence during the conspiracy. And I think, again, the government isn't... The prosecutor is in a good position to know that. And depending on what order the defendant, or excuse me, the judge sentences the defendants, the judge may have some history about the case. Whether the case went to trial or not also tells a different story. But there was trouble with the proposition that a district judge errs based on a sentence that the district judge gives three months after the sentence to the defendant who is appealing. I mean, if I sentence a defendant today and then three months later, give another sentence to a co-defendant, the sentence with the first defendant was based upon the factors at that time. And bringing in subsequent sentencing the court had no idea about at the time is... I don't think that would be a correct application of the Unwarranted Disparity Statute. Thank you. If your honors have any further questions, I'll be glad to answer. Thank you so much. Thank you, your honors. Ms. Hill. Thank you, your honor. You asked for two minutes and you'll get two minutes. I appreciate that. Thank you. Ask for 30 the next time. Oh, okay. That's a good idea. In rebuttal, I would note that, you know, the court certainly not just to the arbitrary or the disparity, the court decision and the differences here, it seems to be the arbitrary application of Mathis in one case and not the other. Now, Judge Gilbert could have applied Mathis in Mr. Moore's case and still sentenced him to 420 months if he had provided the explanation. But we don't know why he didn't apply Mathis because there's no explanation. So in the same cases that even if there were differences and he thought Mr. Moore deserved a harsher sentence, he could still have applied Mathis and imposed that sentence. But I think it was important that he know the difference in the guideline ranges and we simply don't know whether he considered the guideline ranges because it's not mentioned in the order at all. The guideline range with or without intervening case law is simply not addressed in the order. So I think that is the main issue here is it appears to be arbitrary. There's no explanation as to why. And we simply just don't know if Judge Gilbert realized that with application that Mathis and Ruth, that the new guideline range would be 210 to 262 months. And the orders from the two cases appear to be completely different. And the co-defendant's case is laid out very neatly what the guideline ranges would be with and without application of Ruth. And it's clear that he considered both of these. And certainly I would note that while Mr. Norwood is raising that there are certain factors and the judge certainly knows these defendants, it's not really mentioned in the orders. And in the orders, the 3553A discussion doesn't explain, there's no apparent reason to apply Mathis in one and not the other. I would note in the co-defendant's case, the co-defendant had actually been released from prison, committed two new federal crimes and two separate cases and had been revoked on supervised release. So it just strikes me as arbitrary in the application here. Thank you, Your Honor. Well, thank you both so very much. I hope you and your families will stay well and the case will be taken under advisement. Bye-bye. Thank you.